IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **CHARLES M. HOLLIS, JR.** and **MELANIE HOLLIS,** Individually and as Next Friends for **H.H., and C.A.H**, two minor children,<br><br>*Plaintiffs,*<br><br>*-vs-*<br><br>**CHESTNUT BEND HOMEOWNERS ASSOCIATION, and WESTWOOD PROPERTY MANAGEMENT, LLC.,**<br><br>*Defendants.* | Case No. _____<br><br>**JURY DEMAND** |

## VERIFIED COMPLAINT

Come now the Plaintiffs, CHARLES M. HOLLIS, JR. and MELANIE HOLLIS, Individually and as Next Friends for H.H. and C.A.H., and file this Complaint and state as follows:

### NATURE OF ACTION

1. Charles and Melanie Hollis are the parents of H.H., age six years, and C.A.H., age three years. H.H. was born with complex, congenital heart disease and Down Syndrome, and is therefore handicapped within the meaning of the Fair Housing Act. C.A.H., age three years, also has Down Syndrome. The Plaintiffs bring this action for declaratory relief and also seek compensatory damages based on the Defendants' deliberate and purposeful deprivation of the Plaintiffs' rights under the Fair Housing Act, 42 U.S.C. § 3601 *et. seq.*

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over all federal claims in the Complaint arising under the Fair Housing Act, 42 U.S.C. § 3613, and under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4). This Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3.      Venue lies in this District pursuant to 28 U.S.C. § 1391. The Defendants and the Plaintiffs are located in this District. All events giving rise to this action occurred in this District.

## PARTIES

4.      Plaintiffs, Charles "Chappy" Hollis, and Melanie Hollis, are adult citizens and residents of Williamson County, Tennessee. They bring this action in their individual capacities and as next friends for their daughter, H.H., age six years, and C.A.H., age three years.

5.      Defendant Chestnut Bend Homeowners Association (hereinafter "CBHA") is a non-profit corporation that is organized under the laws of the State of Tennessee. Its principal corporate headquarters is located at 256 Seaboard Lane, C-101, Franklin, Williamson County, Tennessee 37067. Its registered agent for service of process is Westwood Property Management, LLC., which shares this Defendant's address at 256 Seaboard Lane, C-101, Franklin, Williamson County, Tennessee 37067.

6.      Defendant Westwood Property Management, LLC. is a Tennessee Limited Liability Company. Its principal headquarters is located at 256 Seaboard Lane, C-101, Franklin, Williamson County, Tennessee 37067. Its registered agent for service of process is Elizabeth R. Flinkow, whose address is 256 Seaboard Lane, C-101, Franklin, Williamson County, Tennessee 37067.

## STATEMENT OF FACTS

7. Chappy and Melanie Hollis are the parents of H.H., age six years, who suffers from complex, congenital heart disease and Down Syndrome. During her brief lifetime, H.H. has undergone three open heart surgeries and also suffers from a severe developmental delay. She requires constant care and supervision due to behavioral issues which expose her to the risk of spontaneous outbursts and self-injurious attacks.

8. H.H.'s physical impairments substantially limit her ability to engage in such major life activities as reading and talking.

9. The Hollises adopted C.A.H. at birth on August 1, 2008. C.A.H.'s impairments include: trouble speaking, walking and vision impairment, as well as moderate hearing loss and inability to eat solid foods because of severe sensory issues. In addition, both H.H. and C.A.H. have low muscle tone and coordination. Neither can manage steps at all. H.H.'s chronological age is 6 years old, but testing showed her cognitive skills were at the level of a three year old. C.A.H. is age three, but his cognitive testing showed him as an 18 month old. Neither, therefore, is able to have unsupervised outdoor play.

10. The Hollises have been advised by their children's treating pediatric cardiologist that, based on their disabilities, they would benefit from a particularized living environment that is therapeutically designed to stimulate their development.

11. Besides H.H. and C.A.H., the Hollises have three teenage children who do not have disabilities.

12. The Hollises reside at 410 Blake Baskin Court, Franklin, Tennessee ("the Property"). Their home is situated within a planned residential development known as Chestnut Bend, a residential community consisting of some 168 homes. As owners of this property, the

3

Case 3:12-cv-00137   Document 1   Filed 02/02/12   Page 3 of 14 PageID #: 3

Hollises are subject to the terms and conditions of the Declaration of Covenants, Conditions and Restrictions for Chestnut Bend Subdivision, of record at Book 1570, Page 166, Register of Deeds Office for Williamson County, Tennessee.

13. Based on the advice and recommendation of H.H.'s treating medical provider, and to assist their disabled children with their specific needs and disabilities, on March 26, 2011, Mr. and Mrs. Hollis made application to the CBHA for approval of construction of a sunroom addition to their home for their daughter, because their home currently does not have suitable space for the equipment needed for the youngest children's physical therapy.

14. In the course of making application and following up, Melanie Hollis made the CBHA and the Architectural Review Committee ("ARC") aware that the sunroom addition was for the benefit of H.H. and C.A.H. and that the two children have handicaps.

15. According to the Declaration of Covenants, Conditions and Restrictions For Chestnut Bend Subdivision, (hereinafter "Master Declaration") the Hollises are required to submit any request for modification of the exterior of their home to the ARC for initial review and approval.

16. According to the Master Declaration, the ARC is required to act on any request for approval by member homeowners within thirty (30) days of submission.

17. More than thirty days lapsed after the Hollises submitted their application to the ARC, and when the ARC did respond, it did so with a request for "additional information," including: a plot plan showing the elevation and dimensions of the addition; a requirement that the materials used match the existing brick, paint colors, *etc*.; a drawing of how the addition would look on the rear of their home; and the name and contact information for their contractor.

18. On April 27, 2011, the ARC denied the Hollis' request.

19. On that same day, the Hollises filed an appeal of the ARC decision to the Chestnut Bend Homeowners Association Board.

20. On May 26, 2011, the Board upheld the ARC denial of the Hollis' construction request. The principal reason given by the Board for denying the request was that the Hollis' plans did not call for a shingled roof, but a glass, conservatory-style roof.

21. Writing on behalf of the Board, M.J. Turner, the property manager for the Chestnut Bend Homeowners Association and an employee of Westwood Management, LLC, the management company engaged to provide property management services to Chestnut Bend, stated in her letter to the Hollises dated May 26, 2011: "The Board has taken all of the information under consideration and although they appreciate your design concept, approval would set an indirect consequence of what will be established as a precedent for other glass roofs of multiple designs that may be less desirable."

22. On August 7, 2011, the Hollises filed a second application for approval to construct the addition to their home. This time they included plans for a shingled roof.

23. The ARC responded to the Hollis' second application by again requesting additional information, this time about the type of materials the Hollises intended to use for their siding of the addition.

24. On August 16, 2011, the Hollises were informed by M. J. Turner that the ARC was now requiring that they use brick on the exterior of their addition instead of siding. The Hollises responded to Ms. Turner informing her that the color brick used in the construction of their home was no longer available.

25. In addition, M. J. Turner of Westwood Group requested that the Hollises provide her with a "rendering of the front and side elevations" of the addition to their home.

26. Each time additional information was requested by either the CBHA, the ARC or Westwood, the Hollises complied with the request; each time their plans were rejected and their application summarily denied.

27. In several of her communications with the ARC members, Melanie Hollis reiterated that the sunroom addition was necessary because her youngest children, H.H. and C.A.H., have disabilities and need the sunroom to have full enjoyment of their premises.

28. On September 13, 2011, Melanie Hollis wrote to the ARC and Chestnut Homeowners Association Board requesting information about a sunroom that had been added by another homeowner in the Chestnut Bend subdivision, Clay Morgan. Clay Morgan is a Chestnut Bend homeowner at 750 Harrow Lane in Franklin, Tenn. His home features a sunroom with a metal roof, siding and stone. The Morgan sunroom is not made of brick.

29. The sunroom addition that the Hollises desired to build bore striking resemblance to that built by Mr. Morgan which had presumably been approved by the ARC and the Board. In her letter to the Defendants, Ms. Hollis emphasized: "To close, our sunroom will be an exact replica of Clay Morgan's . . ."

30. On September 14, 2011, the Hollis' third application for approval was denied by the ARC.

31. In a letter to Ms. Hollis dated October 11, 2011, Ms. Turner falsely claimed that the enclosed sunroom addition to the Clay Morgan home was already present when the Morgans purchased their home.

32. On or about Oct. 11, 2011, Plaintiff Melanie Hollis contacted the Tennessee Fair Housing Council and was referred to Council attorney Tracey McCartney.

33. On Oct. 13, 2011, Ms. McCartney spoke by phone with M.J. Turner and asked her to provide her with information on what sort of design and materials the ARC would accept if the Hollises were to make another proposal.

34. On Oct. 31, 2011, the Defendants' attorney, Robert Notestine, sent Ms. McCartney an e-mail with an attachment containing a letter, also dated Oct. 31, 2011, that M.J. Turner had written to him, enclosing yet a new "Application for Fence/Structure/Exterior Change" form and two photos of homes in Chestnut Bend with sunrooms.

35. In the letter, Ms. Turner listed several items the ARC would require in order to consider approving a sunroom for the Hollises.

36. Among those items were "Samples and/or photos of materials to be used which need to be consistent with materials used on their existing home (*i.e.* roofing that is architecturally consistent with the neighborhood and/or aesthetically appealing which may be metal roofing, traditional tar shingles, or cedar shake roofing; stacked stone; stone façade/faux stone; matching brick and mortar; wood siding painted the color of homes (sic) current trim and/or stain colors; matching windows of those on existing home along with type and color of windows; *etc.*)"

37. The photos attached to Mr. Notestine's e-mail showed two sunrooms made of brick.

38. Ms. McCartney sent an e-mail to Mr. Notestine asking whether, given the photos of brick sunrooms that Ms. Turner had provided, the ARC would be "willing to consider a sunroom that is like Clay Morgan's."

39. Mr. Notestine responded by e-mail, clarifying that "the addition would need to meet the **acceptable materials list** my client furnished previously." (Emphasis added.)

7

40. On Dec. 6, 2011, Ms. McCartney submitted, via e-mail to Ms. Turner, a new sunroom proposal on behalf of the Hollises. The proposal consisted of a short cover letter, a page entitled "Notes and Table of Exhibits," a newly completed fourth "Application for Fence/Structure/Exterior Change" and several full-color exhibits showing the Hollis property lines, a drawing of the proposed sunroom, a color photo of Mr. Morgan's sunroom, a photo of the faux stone proposed to be used, a photo of the proposed and existing windows, a photo of the metal to be used for the roof, a photo of the door the Hollises wish to use, and a picture of the siding along with a color sample.

41. All the materials in the proposal were on the "acceptable materials list" the Defendants provided in Oct. 31, 2011, letter.

42. On that same day, Ms. McCartney provided a copy of the proposal to Mr. Notestine, along with a two-page cover letter outlining the Fair Housing Act issues she believed were involved in the request.

43. In the letter, she reiterated that the Hollis proposal was not a routine request for a home addition; rather, it was a request for a reasonable modification under the Fair Housing Act.

44. With that letter, Ms. McCartney provided copies of letters from professionals who provide health care to H.H. and C.A.H., documenting the children's handicap-related need for a safe indoor play space.

45. On Dec. 15, 2011, Ms. McCartney received via fax a letter from Mr. Notestine setting out, among other things, that "(t)he subdivision standard roof is shingle and not metal. Although metal roofs are in vogue right now the ARC prefers not to approve a metal roof."

46. Mr. Notestine's letter also conditioned the sunroom approval process on the Hollises providing a written assurance that "the exercise equipment would be placed and maintained in the sunroom and not moved outside without further application to the ARC."

47. Upon information and belief, the ARC does not normally require those requesting approval of sunrooms to provide written assurance that items used on the inside would not be moved outside, nor was such a condition listed in M.J. Turner's Oct. 31, 2011, letter to Mr. Notestine or on the "Application for Fence/Structure/Exterior Change" form.

48. Ms. McCartney responded with a letter faxed to Mr. Notestine's office on December 16, 2011. In her letter, she explained that the Hollises wished to move forward with a metal roof because of its cost and ease of installation, and because the Hollises believed the children would benefit from the sensory stimulation of the sounds of a metal roof. Ms. McCartney's letter also conveyed that the Hollises would provide a written assurance that their exercise equipment would not be moved outside upon a showing by the Defendants that they had conditioned other sunroom approvals on such assurances.

49. Ms. McCartney's letter of December 16, 2011, gave the Defendants until the end of business on December 22, 2011, to approve the sunroom as proposed or face legal consequences.

50. On January 16, 2012, fully one month after Ms. McCartney's letter, she received an email from Robert Notestine in which he stated that his inability to respond by the December 22, 2011, deadline was due to his hectic schedule. Mr. Notestine's email did not respond on the merits to Ms. McCartney, and instead merely inquired "What options have your clients decided to pursue?"

9

51. As a consequence of the Defendants' unlawful actions, Plaintiffs have been deprived of the opportunity to make reasonable modifications to their home in order to accommodate their daughter's handicap and disability.

52. As a consequence of the Defendant's unlawful actions, the Plaintiffs have suffered and continue to suffer irreparable harm as well as economic damages.

53. As a consequence of the Defendant's unlawful actions, the Plaintiffs have been forced to begin their search for alternative housing in a community where they will not experience this discriminatory treatment and where they can accommodate the special needs of their children.

## COUNT I
### Fair Housing Act
### (42 U.S.C. § 3604(f)(1), (f)(2), (f)(3)(A) and (f)(3)(B))

54. Paragraphs 1 through 53 are incorporated by reference as if set forth fully herein.

55. In 1988, Congress amended the Fair Housing Act, 42 U.S.C. § 3601 *et seq.,* to extend the guarantee of fair housing to individuals with disabilities.

56. Plaintiffs H.H. and C.A.H. are persons with handicaps under the Fair Housing Act, 42 U.S.C. § 3602(d) and (h), and have suffered damages and loss of civil rights as a result of Defendant's discriminatory conduct.

57. In addition, Plaintiffs Chappy Hollis and Melanie Hollis have suffered, and continue to suffer, economic loss as a result of the Defendants' discriminatory conduct.

58. The Plaintiffs' planned modification and use of the Property constitutes a "dwelling" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

59. The Defendants violated Plaintiffs' rights under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, by:

   a. Enforcing the Master Declaration and the rules and policies governing modification to the residential structures within the Chestnut Bend subdivision in a discriminatory manner by excluding Plaintiffs' proposed modification and use of the Property in a manner which denies to them certain rights and privileges under the Fair Housing Act;

   b. Enforcing the Master Declaration and the rules and policies governing modification to the residential structures within the Chestnut Bend subdivision in a manner that has a disparate impact on the Plaintiffs;

   c. Enforcing the Master Declaration and the rules and policies governing modification to the residential structures within the Chestnut Bend subdivision in an inequitable manner that imposes different terms and conditions on the Plaintiffs because of handicap;

   d. Failing to allow the Plaintiffs to make a reasonable modification to their home to afford them an equal opportunity to use and enjoy the Property; and

   e. Failing to make reasonable accommodations to afford the Plaintiffs an equal opportunity to use and enjoy the Property.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a)  A declaration that the Defendants' practice and policy of denying Plaintiffs a reasonable modification to their property to accommodate the special needs of their disabled children is discriminatory and illegal as violating the Fair Housing Act;

(b) A declaration that the Defendants' actions in denying the Plaintiffs a reasonable accommodation is illegal as violating the Fair Housing Act,

(d) The Court grant preliminary and permanent injunctive relief preventing Defendants from illegally applying and enforcing its Declaration of Covenants, Conditions and Restrictions For Chestnut Bend Subdivision Master Declaration in a manner that discriminates against the Plaintiffs under the Fair Housing Act;

(e) That Plaintiffs have and recover compensatory damages in the amount of $300,000; together with any special damages arising out of the Defendants' conduct as described in the Complaint;

(f) That Plaintiffs have and recover nominal damages;

(g) That Plaintiffs have and recover attorney fees and costs as provided by federal statute;

(h) Such other and further relief as this Court may deem just and appropriate.

## DEMAND FOR JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury in this action of all issues so triable.

Respectfully Submitted,

*[signature: Larry Crain]*

**Larry L. Crain**
THE CRAIN LAW CENTER, LLC
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Telephone: (615) 376-2600
Fax: (615) 345-6009
lcrain@crainlawcenter.com
TN Bar No. 9040
*Attorney for Plaintiffs*

*[signature: Tracey McCartney (LLC)]*

**Tracey McCartney**
TENNESSE FAIR HOUSING COUNCIL
107 Music City Circle, Suite 318
Nashville, TN 37214
Telephone: (615) 874-1636
tracey@fairhousing.com
TN Bar no. 019827
*Attorney for Plaintiffs*

13

# VERIFICATION

STATE OF TENNESSEE )
COUNTY OF WILLIAMSON )

I, MELANIE HOLLIS, being duly sworn, do hereby make oath that the information contained in the foregoing Complaint is true and correct to the best of my knowledge, information and belief.

*Melanie Hollis*
Melanie Hollis

Sworn to and subscribed before me this 1st day of February, 2012.

*C. Staggs*
NOTARY PUBLIC
My commission expires: 5/20/14

My Commission Expires MAY 20, 2014