# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

CHARLES M. HOLLIS, JR., and )
MELANIE HOLLIS, Individually and )
as Next Friends for H.H. and C.A.H., )
two minors, )
                )
       **Plaintiffs,** )      **Case No. 3:12-cv-0137**
                )
                )      **Judge Trauger**
**v.** )
                )
CHESTNUT BEND HOMEOWNERS )
ASSOCIATION and WESTWOOD PROPERTY )
MANAGEMENT, LLC, )
                )
       **Defendants.** )

## MEMORANDUM

This case is again before the court on a Motion for Summary Judgment filed by

defendant Chestnut Bend Homeowners Association (the "CBHA") (Docket No. 22).  The court

previously granted summary judgment to the CBHA.  *Hollis v. Chestnut Bend Homeowners*

*Assoc. et al.*, 974 F. Supp. 2d 1096 (M.D. Tenn. 2013).  Upon appeal, the decision was vacated

and remanded with instructions to apply a proper summary judgment framework to the plaintiffs'

claims.  *See Hollis v. Chestnut Bend Homeowners Assoc. et al.*, --- F.3d ---, No. 13-6434, 2014

WL 3715088 (6th Cir. July 29, 2014.)  For the reasons discussed herein, the defendant's Motion

for Summary Judgment will be denied and the plaintiffs' claims will proceed to trial.

## FACTUAL BACKGROUND[1]

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts
(Docket No. 26), the plaintiffs' responses thereto (Docket No. 32), the exhibits filed in support of
the plaintiffs' Response (Docket No. 31), the full deposition transcripts of Melanie Hollis,
Charles M. Hollis, Mary Jean Turner, Robert Notestine, and Tracey McCartney (Docket Nos. 39-
43), and related exhibits.  The court draws all reasonable inferences in favor of the non-moving

The facts of this case have been described thoroughly by this court and the Sixth Circuit. *See* 974 F. Supp. 2d 1096, 1097 (M.D. Tenn. 2013); *see also* 2014 WL 3715088, at *1-5. For purposes of context, however, the court will briefly describe the events underlying the plaintiffs' claims.

## I.     Overview

In late 2011 and early 2012, Charles and Melanie Hollis lived with their five children, including two minors who are physically and mentally disabled, in a home they owned in Franklin, Tennessee. Their home was situated in a residential subdivision known as Chestnut Bend. The defendant, the CBHA, is an organization of homeowners within the Chestnut Bend community that is responsible for managing the subdivision. A board of five members governs the CBHA and is responsible for appointing members of various committees (the "Board"). The CBHA employs a property manager, Westwood Property Management ("Westwood"), to handle daily affairs. Mary Jean Turner, employed by Westwood, met and corresponded regularly with the Board during the relevant period.

Properties within Chestnut Bend are subject to various covenants, conditions, and restrictions. One such covenant precludes homeowners from building above-ground structures or improvements until the homeowner receives approval from the CBHA's Architectural Review Committee (the "ARC"). The ARC is comprised of three members, all of whom are appointed by the Board.

Homeowners submit architectural improvement applications to Turner, using a form that requires disclosure of various specifications of the proposed improvement. At all relevant times, Turner was in charge of reviewing homeowners' applications, to ensure their completeness, and

---

party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

then submitting the applications to the ARC members for review. The ARC members would review the proposal and convey their decision to Turner.

In March 2011, Mrs. Hollis sent an email to an ARC member declaring the Hollises' intention to add a sunroom to their house. The Hollises stated that the purpose of the sunroom was to add a "particularized living environment" for H.H. and C.A.H. that was "therapeutically designed to stimulate their development." The first proposal was incomplete and the ARC rejected it, for reasons detailed in this court's September 24, 2013 Opinion. 974 F. Supp. 2d at 1099-1101. Over several months, the Hollises submitted two additional proposals to the ARC, which were also rejected for a variety of reasons, including the applications' deficiencies. *Id.* at 1101-05. Because of the numerous applications filed by the Hollises and discord that arose among the parties over time, the Board became involved in the review process of the Hollises' applications (in conjunction with the ARC).

## II.    **The December Request**

The fourth application submitted by the Hollises is the only application at issue here. 2014 WL 3715088 at *2. On December 6, 2011, the Hollises' attorney, Tracey McCartney, submitted a complete application to the ARC (the "December Request"). The December Request expressly stated that the plaintiffs' addition "is to be a reasonable modification of the Hollis home under the federal Fair Housing Act." After the Board reviewed and discussed the proposal at the December meeting, the Board's attorney, Bob Notestine, prepared an "approval letter" that included a "request for consideration of a shingled roof," instead of the metal roof proposed by the plaintiffs in their December Request ("December Board Letter"). The December Board Letter, which Notestine sent to the Hollises' attorney on December 15, 2011, stated that the "ARC prefers not to approve a metal roof" because "there is some feeling that

approval of metal roofs could create a new standard or at least would cause confusion about the shingle roof preference" of the neighborhood. Notestine further requested assurances, on behalf of the Board, that H.H. and C.A.H.'s exercise equipment, which the plaintiffs mentioned would be stored in the sunroom, would not be left outside. The letter concluded: "Please review these comments and advise if your client would agree to the above . . . requests by the ARC. If so, I would suspect that approval will be forthcoming."

McCartney responded to the December Board Letter on the same day. McCartney wrote that her clients would consider the shingled roof option but were leaning towards a metal roof. She further explained that cost was a consideration with regard to the roofing material. McCartney's response also directed Notestine to a letter sent by Turner on October 31, 2011, which stated that a metal roof was permissible under the ARC's guidelines. (Docket No. 25, Ex. 5 (citing Docket No. 31, Ex. 6 at 23).) She wrote that she would consult with her clients about the shingled roof consideration but requested that the ARC honor the October letter and approve the proposed metal roof. Notestine forwarded McCartney's December 15, 2011 letter to Turner, who in turn forwarded it to the board members. At least one board member immediately responded: "We said it in writing so we honor it. Our request for alternate roofing has been acknowledged; perhaps they will come through on it."

On December 16, 2011, McCartney followed up with Notestine. In a letter, she wrote that the Hollis family would be moving forward with a metal roof, which was acceptable per Turner's October 31, 2011 letter and the ARC guidelines, because "[a] metal roof has a number of advantages for the Hollises, including cost and relative ease of installation." The letter further stated that the Hollises prefer metal because of the sensory stimulation that it can provide for

H.H. and C.A.H.  McCartney wrote that the Hollises would proceed with legal options if the ARC did not "consent[] to the design as submitted, metal roof included," within six days.

A month passed before Notestine responded to McCartney's letter.  On January 16, 2012, Notestine replied to McCartney by email, copying Turner:

> I obviously was unable to get back to you by December 22, 2011.  The end of the year was particularly hectic for me (as was the start of this year).  You stated in your letter that your clients would proceed "with available legal options."  What options have your clients decided to pursue?

## III.    **The Hollises' Move**

Sometime in 2011, shortly after the ARC rejected the Hollises' initial sunroom application, the Hollises began to look for a new house in a different neighborhood.  In December 2011, they found and purchased a new home on Kinnard Springs Road in Franklin, Tennessee.  The Hollises testified that, although Mrs. Hollis was reluctant to leave their home in Chestnut Bend, Mr. Hollis felt that they were being "forced out" of Chestnut Bend by the sunroom debacle.  The Hollises moved into their new home in March 2012 and sold their Chestnut Bend home in the same month.

The Hollises' move is the basis for their monetary damages claim in the amount of nearly $300,000.  The plaintiffs claim that, as a result of the move, they lost $206,265.79 in improvements that they had already made to their Chestnut Bend home, including nearly $10,000 spent on "Personal Touch Ceramic Tile," tens of thousands of dollars in landscaping fees (including what appears to be nearly $50,000 in landscaping fees over an eight-month period in 2009 alone), a dishwasher worth over $1,000, and nearly $13,000 spent on hardwood flooring.  (Docket No. 39 at 141-47).  The plaintiffs also claim a loss of $45,100—the difference between the purchase price of their home in 2006 and the sale of their home in 2012 and seek

recovery of damages related to "emotional upheaval" suffered by H.H., C.A.H., Mr. Hollis, and Mrs. Hollis.

## IV.    **Procedural History**

The Hollises filed this action against the CBHA and Westwood on February 2, 2012, alleging, *inter alia*, that the defendants failed to grant the Hollises a reasonable accommodation or reasonable modification in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*. ("FHA" or "the Act").  (Docket No. 1.)  The defendants answered the Complaint on March 13, 2012.  (Docket No. 10.)  On June 26, 2013, the CBHA and Westwood filed this Motion for Summary Judgment (Docket No. 22), which the plaintiffs opposed (Docket No. 30).  On August 14, 2013, the plaintiffs agreed to dismiss Westwood from the litigation, and in return, Westwood agreed to educate its employees about the "requirements, spirit and purpose of the Fair Housing Act."

On September 26, 2013, this court granted summary judgment to the defendant after applying the familiar three-part evidentiary standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to the plaintiffs' FHA claims.  The court concluded that, although the plaintiffs had met their *prima facie* burden, the CBHA had set forth a legitimate, non-discriminatory reason for its rejection of the December Request, and the plaintiffs had failed to present evidence of pretext.  The court also dismissed the individual claims filed by Mr. and Mrs. Hollis on the ground that they lacked standing to bring personal-capacity FHA claims. Subsequently, the court denied a motion for reconsideration filed by the Hollises.  The Hollises filed a timely appeal.

The Sixth Circuit considered two issues upon appeal: (1) whether this court erred in dismissing the individual FHA claims of Mr. and Mrs. Hollis, and (2) whether this court's

application of the *McDonnell Douglas* standard to the plaintiffs' claims was inappropriate.  The

Sixth Circuit found for the Hollises with regard to both questions.  As to the appropriate standard

for the Hollises' FHA claims, the court rejected the *McDonnell Douglas* test, which focuses on

intent, because "[i]ntent is irrelevant in reasonable-modification cases."  2014 WL 3715088, at

*7-8 (internal citations omitted).[2]  The court then offered guidance with regard to the proper

legal standard for reasonable modification claims:

> An FHA reasonable-modification plaintiff, like an FHA reasonable-
> accommodation plaintiff, must prove both the reasonableness and necessity of the
> requested modification.  And although we sometimes refer to those as the
> "operative elements," other equally important elements also comprise the claim.
> In addition to proving reasonableness and necessity, an FHA reasonable-
> accommodation or reasonable-modification plaintiff must also prove that she
> suffers from a disability, that she requested an accommodation or modification,
> that the defendant housing provider refused to make the accommodation or to
> permit the modification, and that the defendant knew or should have known of the
> disability at the time of refusal.  The burden is on the plaintiff to establish each
> element.

*Id.*  As to the mechanics of the proper standard at the summary judgment stage, the court wrote:

> When a plaintiff brings an FHA reasonable-accommodation or reasonable-
> modification claim, the burden of persuasion—i.e., the ultimate burden to prove
> both reasonableness and necessity—lies always with the plaintiff.  If the case goes
> to trial, in other words, it is the plaintiff rather than the defendant who must show
> that the request is both reasonable and necessary.  But when the defendant moves
> for summary judgment, the defendant bears the burden to show that there is no
> genuine issue of material fact and that the defendant is entitled to judgment as a
> matter of law.

*Id.* (internal citations omitted).  Accordingly, the Sixth Circuit vacated this court's decision and

remanded the action for application of the appropriate summary judgment standard to Mr. and

---

[2] The court notes that the Sixth Circuit consistently applies the *McDonnell Douglas* burden-
shifting framework to interference claims under the Family and Medical Leave Act, 29 U.S.C. §
2601 *et seq.* ("FMLA"), even though it is well settled that the element of intent is irrelevant to
the FMLA interference inquiry.  *See Donald v. Sybra*, 667 F.3d 757, 762 (6th Cir. 2012); *Grace
v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008); *see also Tillman v. Ohio Bell Telephone Co.*, 545
F. App'x 340, 352 (6th Cir. 2013).  It is unclear how the Sixth Circuit's ruling in this case will
affect the application of *McDonnell Douglas* to FMLA interference claims going forward.

Mrs. Hollis's individual FHA claims, as well as their claims as next friends of their minor children.

## ANALYSIS

### I.    Rule 56 Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party."  *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 252 (1986).  An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party.  *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

### II.    The Fair Housing Act

#### A.   The Act

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2).

> Discrimination under the Act includes "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises." 42 U.S.C. § 3604(f)(3)(A). The statute also makes unlawful any "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § 3605(f)(3)(B).
>
> A "modification" under the FHA is distinct from an accommodation. *See Weiss v. 2100 Condominium Ass'n, Inc.*, --- F. Supp. 2d ---, 2013 WL 1767974, at *6 (S.D. Fla. Apr. 8, 2013); *see also* 24 C.F.R. § 100.203; Joint Statement of HUD and DOJ, *Reasonable Modifications under the Fair Housing Act* ( Docket No. 31 Ex. 69) ("Joint Statement"). The Act does not provide a definition for "modification," but regulations promulgated by HUD define a modification as "any change to the public or common use areas of a building or any change to a dwelling unit." 24 C.F.R. § 100.201. Claims for reconstruction or renovation to a dwelling are actionable under the reasonable modifications section of the FHA, and not the reasonable accommodation section. *See Weiss*, 2013 WL 1767974, at *6; *see also Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 259 (E.D.N.Y. 2009); Joint Statement at 3, 6.

974 F. Supp. 2d at 1108-09. Here, the plaintiffs have urged the court to treat their sunroom request as a request for reasonable modification, and not reasonable accommodation. The distinction is unnecessary because, as described below, the Sixth Circuit has determined that the same essential elements apply to both claims.

## B. Elements of the Plaintiffs' FHA Claims

The essential elements of the Hollises' reasonable-modification claims—meaning, the elements that the plaintiffs must establish to win at trial—are: (1) H.H. and C.A.H. suffered from a disability; (2) the Hollises requested an accommodation or modification; (3) the CBHA refused to make the accommodation or permit the modification, and (4) the CBHA knew or should have

known of the disability at the time of the refusal.  The Hollises must also demonstrate that the requested modification was both reasonable and necessary.

With regard to the necessity of the modification, a plaintiff must demonstrate that, "but for the requested accommodation or modification, he 'likely will be denied an equal opportunity to enjoy the housing of [his] choice.'"  2014 WL 3715088, at *9 (quoting *Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 794-95 (6th Cir. 1996)).  "The necessity element is, in other words, a causation inquiry that examines whether the requested accommodation or modification would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive."  *Id.*

Typically, however, a reasonable accommodation or modification claim will turn on the question of reasonableness.  "To determine the reasonableness of the requested modification, the burden that the requested modification would impose on the defendant (and perhaps on the persons or interests whom the defendant represents) must be weighed against the benefits that would accrue to the plaintiff.  This is a highly fact-specific inquiry."  *Id.*  Put simply, "[a] modification should be deemed reasonable if it 'imposes no fundamental alteration in the nature of a program or undue financial and administrative burdens.'"  *Id.* (quoting *Groner v. Golden Gate Apartments*, 250 F.3d 1039, 1044-45 (6th Cir. 2001)) (additional citations omitted).

### III.     The Defendant's Motion

To succeed at this stage and win dismissal of the plaintiffs' claims, the CBHA must demonstrate that no genuine question of material fact exists as to at least one essential element of the plaintiffs' claims.  Here, the CBHA challenges two elements of the Hollises' claims.  It argues that it is undisputed that (1) the CBHA did not refuse to make a modification, and (2) the plaintiffs' requested modification was unreasonable.  At this stage, the Hollises' burden is not

insignificant.  They must provide evidence beyond their Complaint and set forth specific facts demonstrating that a genuine issue of fact for trial exists as to these two elements.

### A.  Is it undisputed that the CBHA did not refuse to make a modification?

The CBHA argues that Notestine's December 15, 2011 letter, requesting that the plaintiffs consider a shingle roof instead of a metal roof, constitutes an "approval" (and therefore, not a refusal) of the December Request.  Moreover, it contends, "even if the [December 15, 2011 Letter] is not read to be an approval, neither can it be read to be a denial or refusal of a requested modification or accommodation."  Therefore, the CBHA argues, it is undisputed that the CBHA did not refuse the December Request.

The court disagrees.  First, the express language of Notestine's December 15, 2011 letter contradicts the defendant's categorization of the letter as an approval.  The letter concludes: "Please review these comments and advise if your client would agree to the above . . . request[] by the ARC.  ***If so, I would suspect that approval will be forthcoming.***"  (Docket No. 25, Ex. 4 (emphasis added).)  By its own plain text, the Letter cannot be considered an approval because an approval was *forthcoming*.  Moreover, the approval appears to have been conditioned on the Hollises' selection of roof material and promise to keep exercise equipment indoors.

Second, following the December Approval Letter, the plaintiffs responded twice and requested communication of approval from the Board before December 22, 2011—what appears to the court to be a reasonable deadline.  Despite the plaintiffs' timely responses to Notestine, no further communication to the plaintiffs with regard to approval was made—not even after the year ended or when Notestine reached out to McCartney in January 2012.  Finally, although Notestine testified at his deposition that he "thought [the CBHA] had basically approved the room," the written communications between the parties demonstrate that no such approval was

communicated to the plaintiffs.  As explained by the court in its earlier decision, whether or not the Board considered the application approved is irrelevant—what matters is that the plaintiffs never received a communication of approval for their December Request.

In short, it is undisputed that (1) the defendant did not send any communication expressly approving the December Request, and, (2) despite McCartney's request for approval of the proposal before December 22, 2011, the defendant was silent with regard to approval between December 15, 2011 and January 16, 2012.  Upon review of the record, the court cannot conclude that no reasonable jury could find that the CBHA approved (or did not refuse) the Hollises' modification.  Consequently, summary judgment is inappropriate for the defendant with regard to the element of "refusal."

**B.  Is it undisputed that the Hollises' requested modification was unreasonable?**

The CBHA appears to argue that the Hollises' requested modification was unreasonable because the Hollises insisted on a metal roof.  According to the defendant, it approved the addition of the sunroom on December 15, 2011, but "requested a shingle roof rather than a metal roof" and sought assurance that the children's exercise equipment would be kept inside the sunroom.  It submits that, because "[t]here was nothing about these requests" that would have affected the plaintiffs' intended use and enjoyment of the sunroom, it is undisputed that the plaintiffs' requested modification was unreasonable.  The defendant relies on *Loren v. Sasser*, 309 F.3d 1296 (11th Cir. 2002) and argues that, as in *Loren*, the plaintiffs' request for modification was unreasonable because an alternative modification (the shingle roof suggested by the defendant) would have accomplished the same purpose as the proposed modification.

In *Loren*, a Florida homeowner (and two disabled members of her family) sued an association of property owners and their subdivision's corporate developer, alleging that the

12

defendants, who managed their deed-restricted subdivision, failed to provide a reasonable modification to the plaintiffs' home because they did not permit the plaintiffs to build a chain-link fence in their front yard for the disabled plaintiffs to use as safe outdoor space. 309 F.3d at 1298. After the district court granted summary judgment to the defendants, the plaintiffs appealed. The Eleventh Circuit affirmed the district court's decision after concluding that there was no evidence that the defendants had discriminated against the plaintiffs/appellants. Specifically, the Eleventh Circuit found it persuasive that (1) the appellants failed to introduce evidence that other houses in the subdivision had been permitted to construct fences on the front of their lots, and (2) the defendants had informed the appellants that they would approve the construction of a fence on the back yard or side yard of their property. The court wrote, "[w]hile a chain-link fence on the back or side yard of their property may not be appellants' preference, it nevertheless would be a reasonable accommodation for the asserted needs of the handicapped appellants." *Id.* at 1302-03.

At this stage, the court concludes that the defendant's argument is without merit and its reliance on *Loren* is misplaced. Here, substantial evidence in the record demonstrates that, unlike in *Loren*, a question of fact exists as to whether the Hollises' proposed sunroom would have imposed a fundamental alteration in the nature of the CBHA's program or otherwise imposed undue financial or administrative burdens on the CBHA. For instance, it is undisputed that at least one other Chestnut Bend homeowner was permitted to build a sunroom with a metal roof and that the ARC guidelines list metal as an acceptable material for roofing. Moreover, it is undisputed that, in an October 2011 letter, Turner stated that metal roofing was an acceptable material for home additions. Taking this evidence in the light most favorable to the plaintiffs, the court finds it difficult to believe that a metal roof constitutes a fundamental alteration of the

aesthetic of the Chestnut Bend community, or that the metal roof would have imposed undue burdens on the neighborhood. Nevertheless, at a minimum, the plaintiffs have met their burden and established that a triable issue of fact exists as to the reasonableness of the proposed metal roof.

Additionally, the plaintiffs have presented sufficient facts to demonstrate that the benefits to H.H. and C.A.H. from the proposed sunroom may have outweighed the possible harm to the CBHA. Unlike the appellants' proposed front-yard fence modification in *Loren*, it appears undisputed that the plaintiffs' proposed modification here—a metal roof—was not just the plaintiffs' preference. According to H.H. and C.A.H.'s physical therapist, the metal roof was intended to provide additional sensory benefits to H.H. and C.A.H. that the defendant's alternative proposal—a shingle roof—would not provide.

Consequently, a triable issue of fact exists as to whether the plaintiffs' December Request was reasonable. Accordingly, summary judgment is inappropriate for the defendant with regard to this element of the plaintiffs' claims.

## CONCLUSION

For these reasons, the defendant's Motion for Summary Judgment (Docket No. 22) will be denied and the plaintiffs' FHA claims will proceed to trial.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge